In re The MARRIAGE OF Terry K. ROSS and Sharon M. Ross.

**Terry K. ROSS, Appellant,**

v.

**Sharon M. ROSS, Respondent.**

**No. WD 40645.**

Missouri Court of Appeals, Western District.

June 27, 1989.

Jean E. Goldstein, Columbia, for appellant.

Louis F. Cottey, Kirksville, for respondent.

Before SHANGLER, P.J., and MANFORD and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

In this dissolution of the marriage case between Terry Ross (husband) and Sharon Ross (wife), the husband disputes the court's decision as it relates to the award of custody, support payments, the division of property, the award of maintenance, and attorney's fees.

The couple married on August 14, 1965. They separated in October, 1986. They have two children, Christopher, born on November 15, 1971, and Jeremy, born on June 16, 1975. At the time trial, the husband was 44 years old and in good health. He had a B.S. in education and a B.S. in electrical engineering. He had been employed by the Associated Electric Coop Power Division for nine and a half years. He was an electrical maintenance superintendent and his gross salary was $2,007.36 paid bi-weekly ($4,349.28 per month). His projected yearly income for 1988 was $52,191.36, plus a merit increase anticipated at $1,567.74. His employer provides transportation to and from work.

The wife was 41 years old. She had completed 31.5 college hours in a business course and 36 hours of vocational school credits. Throughout the marriage, the wife has held several jobs, including: secretary at the university extension center, a bank teller, a waitress, a receptionist, an employee at a nursery school, and a part time employee at a Macon school. For the two years prior to the judgment, she worked as a learning disability teacher aid in a high school of the Macon School District. Her gross monthly salary is based on a six hour day at $4.25 an hour and when spread out over a year averages $406.01 a month, but she only works nine months a year. The court found that the marriage was "somewhat typical in that wife helped finance a portion of her husband's education, raised the children, and when husband's education or advancement necessitated a geographic move, wife subordinated her job or career to follow her husband." The husband asked for joint legal custody of the children, while the wife demanded sole custody. The husband stated he would maintain health insurance for the children and would remain financially liable for all their medical, hospital, dental and visual needs. The parties stipu-

lated to the value of a majority of the marital property except for the value of the husband's retirement plan and the value of the household goods.

The first point raised by the husband on appeal is that the trial court erred in not awarding joint custody. The award of joint custody is discretionary. *Kline v. Kline,* 686 S.W.2d 13, 17 (Mo.App.1984). The husband, as petitioner for the dissolution, argues that the wife never asked for sole custody and that public policy here dictates the award of joint custody.

■ The wife in her answer and counterclaim did ask that the court award her the care, custody and control of the minor children, subject to the husband's reasonable rights of visitation. The husband's argument that the wife never asked for sole custody is incorrect. The misunderstanding stems from testimony given by the wife stating she did not object to joint custody. She held the belief that she and her husband saw "eye to eye" on how to raise the children.

Under § 452.375, there is no presumption in favor of joint custody. Joint custody is simply an option. *Kline v. Kline,* 686 S.W.2d 13, 15 (Mo.App.1984). The trial court is vested with broad discretion in determining child custody. *In re Marriage of Mihalovich v. Mihalovich,* 659 S.W.2d 798, 801 (Mo.App.1983). The trial court's findings on matters of custody will be upheld unless the appellate court is convinced that the welfare of the child dictates some other disposition. *Davis v. Davis,* 693 S.W.2d 879, 883 (Mo.App. 1985).

*S.R. v. S.M.R.,* 709 S.W.2d 910, 915 (Mo. App.1986). The trial court did not abuse its discretion in this case. The husband's right of visitation included one half of major holidays and 30 days in the summer.

■ The husband bases his public policy argument concerning joint custody on § 452.375.3, RSMo.Supp.1988. That section reads:

The general assembly finds and declares that it is the public policy of this state to assure children frequent and meaningful contact with both parents after the par-

ents have separated or dissolved their marriage, and that it is in the public interest to encourage parents to share decision-making rights and responsibilities of child rearing. In order to effectuate this policy, the court shall determine the custody arrangement which will best assure that the parents share such decision-making responsibility and authority and such frequent and meaningful contact between the child and each parent, as is indicated in the best interest of the children under the relevant circumstances.

Here, that section was not in effect when the petition was filed. Therefore, it is inapplicable to this case. *R.E.G. v. E.K.H.,* 761 S.W.2d 289, 290 (Mo.App.1988). Even considering the new subsection, the trial court's order on this subject was not an abuse of discretion.

■ The husband's second point on appeal concerns valuing and dividing the marital property based on the tax consequences. Proceeds from the sale of stock in the amount of $25,626.00 were given to the husband, and in return he was ordered him to pay his wife $25,358.00 (to equalize the division of property). No taxes were due on that sale for a year. The husband made no estimate on the exact amount of taxes that would be due.

The husband also complains about the types of assets given to him, ie., he could only cash in his Associated Electric retirement account if he left his employment, and the fact he was given the IRA and 401(k) accounts which penalize early withdrawals.

While it is true that the trial court should take tax consequences into account, *Butcher v. Butcher,* 544 S.W.2d 249 (Mo.App. 1976), here the parties stipulated to the value of all but one asset, the retirement plan. The court adopted the husband's valuation on this plan. The parties did not stipulate to or present precise evidence as to the tax consequences of the different types of property. Having failed to show the tax consequences, the husband will not now be heard to complain. *Taylor v. Taylor,* 736 S.W.2d 388, 391 (Mo. banc 1987).

The husband also complains in a subpoint about language in the judgment that "certain assets bear individual tax consequences if taken from one spouse and distributed to the other" being an incorrect statement of law. There is no requisite showing of prejudice calling for a reversal. Rule 84.13(b).

■ The husband's third point on appeal is that the trial court erred in the amount of maintenance of $750.00 a month, and in not limiting the duration of maintenance.

■ The judgment concerning maintenance is presumed correct and the respondent has the burden to prove that is erroneous. *In re Marriage of Jackson*, 592 S.W.2d 875, 877 (Mo.App.1980).

The wife's evidence showed that she would require an amount as low as $580 or as high as $932 a month in maintenance. The judge, taking into account evidence adduced during cross-examination, concluded that $750.00 would be appropriate.

■ The husband believes that the trial court abused it's discretion in deciding that the wife should get $750.00 a month because it incorrectly computed the interest rate on a Smith–Barney Test account and therefore the computation of the wife's needs was incorrect. The figure representing "possible income from assets" which the husband complains about was shown in the trial court's Findings of Fact. That, however, was a voluntary statement by the court. The husband does not have a right on appeal to assign as error a specific finding of fact or conclusion of law, or the lack thereof, when such findings were not made at the request of one of the parties. *Ryder v. Hullinger Trucking Company, Inc.*, 758 S.W.2d 718, 721 (Mo.App.1988). Thus, viewing all the evidence most favorable the award, the result of $750.00 was proper. As for the husband's complaint about the duration of the maintenance (unlimited), § 452.335.2, RSMo.1986 provides:

The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The standard of living established during the marriage;

(4) The duration of the marriage;

(5) The age, and the physical and emotional condition of the spouse seeking maintenance. . . .

Viewing the record and considering those factors, the trial court's award of maintenance was fair. The evidence showed that while the couple was married they enjoyed a good standard of living. The wife had a present health condition which placed limitations on the types of jobs at which she could work. Standing for long periods of time caused her legs to swell and she experiences pain in her leg and hip. Additionally, she has vision problems. During the early years of marriage she worked as a receptionist, secretary and bank teller, and as mentioned previously worked as a teacher's aide. A college degree could be obtained by her in five years, so the husband says the duration of maintenance should have been limited to five years. The trial court found that "her present role as a homemaker for the children, work schedule, and health conditions do not lend themselves to any realistic belief that education or training will improve dramatically wife's employment opportunities in this community." The husband quotes from *Lampe v. Lampe*, 689 S.W.2d 768, 769 (Mo.App.1985), where the "trend today is to encourage spouses to become self-sufficient." While that may be true, each action must be examined on a case-by-case basis. Section 452.335 gives a trial court great latitude in granting maintenance. *Doerflinger v. Doerflinger*, 646 S.W.2d 798, 801 (Mo. banc 1983). There was substantial evidence to

justify the amount and duration of court's award. *Id.*

■ The husband also complains that the total award ($750 maintenance and $350 support for each child) exceeds his ability to pay under Section 452.335.2(6), which reads:

(6) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

The burden is on the husband to show that the trial court's ruling was in error; he has not done so and this point is denied.

The husband asks the amount of support of $350 per month per child be reduced as well as his obligation to pay medical and dental expenses. He says the fact that the wife had survived on a smaller amount or the guidelines called for a lesser amount do not call for a change. The evidence supported this amount and the husband has not carried the burden of his inability to pay.

The husband's final point is on the award to the wife of part of her attorney fees. Section 452.355, RSMo.1986 provides that the court looking to the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending the dissolution of marriage action. The total amount of fees still owed by the wife as of March 8, 1988 was $6,607.88. He was ordered to pay $4,000.00. *Ederle v. Ederle,* 741 S.W.2d 883, 885 (Mo.App.1987). The trial court's award of $4,000.00 will not be disturbed.

The judgment is affirmed.