**Linda Mae COBLE, Respondent,**

v.

**Dale Keith COBLE, Appellant.**

**No. WD 51364.**

Missouri Court of Appeals,
Western District.

Oct. 15, 1996.

Robert Todd Wilhelmus, Mission, Kansas, for appellant.

William T. Bernard, Kansas City, for respondent.

Before ULRICH, C.J., P.J., and BRECKENRIDGE and LAURA DENVIR STITH, JJ.

ULRICH, Presiding Judge.

Dale Coble appeals the Full Order of Protection issued under authority of section 455.010 et seq., by the Circuit Court of Jackson County restraining both him and respondent, Linda Coble, from certain conduct, each toward the other; giving the parties joint legal custody of the minor children with Mrs. Coble having primary physical custody; and ordering Mr. Coble to pay $888.05 per month for child support and $795.58 per month for maintenance during the pendency of the order. Mr. Coble alleges error in the court's quashing his subpoena duces tecum served on Mrs. Coble the day before the hearing and in determining the awards of child support and maintenance. The ruling of the trial court is affirmed.

Linda Mae Coble filed a Petition for an Order of Protection, an adult abuse action, as provided in section 455.010 et seq., on May 9, 1995. The court issued an ex parte Order of Protection which was served upon Mr. Coble. The order set the matter for hearing on May 23, 1995. After applications for change of judge were granted on behalf of both parties, the matter was set for hearing to begin June 8, 1995.

On June 7, 1995, at approximately 1:30 in the afternoon, Mr. Coble's attorney served Mrs. Coble with a subpoena duces tecum to appear at the hearing the following morning and to produce all bills or statements for electricity, water, gas, telephone, trash collection or recycling, credit cards, checking accounts, cable and/or satellite television, beepers or pagers, tanning salons, and treatment by dentists, doctors, psychologists and psychiatrists since January 1, 1994. Mr. Coble also included as a part of the subpoena demand for production of Mrs. Coble's 1994 income tax return, paycheck stubs, tape recordings of any telephone conversation with Mr. Coble since January 1, 1994, or any taped telephone conversations in which Mr. Coble was mentioned since January 1, 1994, and all depository account documents. Mrs. Coble did not bring with her to court on June 8 the documents sought. Mrs. Coble made an oral motion to quash the subpoena during trial. The court sustained the motion.

The court issued its Full Order of Protection on June 8, 1995. Although both parties had submitted child support worksheets ("Form 14's"), the court rejected them and prepared its own Form 14, determining a monthly child support figure of $888.05 per month. Maintenance was awarded to Mrs. Coble in the amount of $795.58 per month.

Mr. Coble timely filed this appeal.

## I. *MOTION TO QUASH*

Mr. Coble claims that granting Mrs. Coble's motion to quash his subpoena duces tecum constituted unconstitutional state action in that it denied him his right to subpoena witnesses and to obtain relevant evidence in his behalf. The rationale for his claim is that the 6th and 14th amendments guaranteed his right to confront and cross-examine opposing witnesses and to rebut their testimony with controverting evidence. He claims quashing the subpoena precludes his confronting Mrs. Coble with evidence that supports his position.

After discussing general fourteenth amendment case law, Mr. Coble discusses the true issue of his claim: whether Mrs. Coble's motion to quash the subpoena duces tecum was timely.

Section 491.100.3, RSMo.1994,[1] deals with the timeliness of a motion to quash a subpoena duces tecum, stating:

3. Where a subpoena commands the person to whom it is directed to produce the objects, books, papers, or documents designated therein, the court upon motion may, promptly, and in any event *at or before* the time specified in the subpoena for compliance therewith, quash the subpoena if it is unreasonable and oppressive or condition denial of the motion upon the advancement by the person in whose behalf the subpoena is issued of the reasonable cost of producing the objects, books, papers, or documents. (emphasis added)

The statute contemplates, as a basis for granting a motion to quash, a timely motion and the unreasonable or oppressive nature of the subpoena.

■ Mr. Coble's subpoena duces tecum set the June 8, 1995, hearing as the time for compliance with the subpoena. At this hearing, Mrs. Coble made an oral motion to quash the subpoena. Mr. Coble claims the motion was untimely because Mrs. Coble waited until the hearing had begun before moving to quash the subpoena, thereby waiving her right to have the subpoena quashed. The motion to quash the subpoena was made at the hearing at which the subpoena directed that the documents were to be produced. Determination of reasonableness of the requirement to produce documents rests within the trial court's sound discretion. *Id.* Section 491.100.3 allows a motion to quash to be made at the time set for compliance; Mrs. Coble's motion was timely.

The next question that confronted the court was whether the subpoena was unreasonable or oppressive. § 491.100.3. Litigants have the statutory right to require the production of any document the litigant believes necessary to address the issues raised in the action provided the subpoena is not unreasonable or oppressive. *State ex rel. Rowland Group Inc. v. Koehr,* 831 S.W.2d 930, 933 (Mo. banc 1992).

■ The subpoena demanded production of a great volume of documents and was not served until the afternoon preceding the morning hearing when compliance was required. If Mr. Coble needed the numerous documents he requested to defend against Mrs. Coble's petition for a protective order, his subpoena could have been served at an earlier date to allow adequate time to gather and prepare the documents.

The trial court did not abuse its discretion and did not err in granting Mrs. Coble's motion to quash the subpoena duces tecum served upon her by Mr. Coble.

## II. *CHILD SUPPORT*

Mr. Coble claims that the trial court erred in its calculation of presumed child support in

1. All statutory references are to the Missouri Revised Statutes, 1994, unless otherwise indicated.

that it failed to consider the tax ramifications regarding the allowance of exemptions for the children and failed to consider the parties' income from the rental property in arriving at the presumed child support amount of $888.05.

The trial court properly adhered to the procedure outlined in *Woolridge v. Woolridge*, .915 S.W.2d 372 (Mo.App.1996), that is to be utilized when a court chooses to reject the completed Form 14's filed by the parties. Mr. Coble's first complaint charges error in the court's refusal to include the rental income from one of the parties' rental properties as part of the monthly income for Mrs. Coble in the Form 14 calculation.[2] This argument ignores the considerable testimony at the hearing that neither party was to receive monies from the rental properties during the pendency of the divorce because the rental checks were made payable to both parties and neither agreed to endorse the checks if the proceeds were to be disposed of in a manner differently than desired. As best can be determined by the record, the rent payments were to be held in escrow if the checks were cashed.[3]

Income is defined as "a gain or recurrent benefit usually measured in money that derives from capital or labor" or "the amount of such gain received in a period of time." *WEBSTER'S NEW COLLEGIATE DICTIONARY* 576 (1979). Consistent with trial testimony and the definition of "income," the monthly gross income for each party contained in the Form 14 prepared by the court does not include money from the rentals because neither party received the monies. Which party was entitled to the proceeds of the rental property was unnecessary in determining the limited issues presented in this proceeding. Mr. Coble's argument that the rental income from one of the properties should have been included as part of Mrs.

Coble's monthly gross income is without merit.

Mr. Coble also claims error in the trial court's alleged failure to consider "the economic impact of the income tax consequences of the exemptions for the children on the parties income tax returns" in preparing its own Form 14. The court was not obligated to consider the ramifications of the allocation of the tax exemptions in calculating the presumed child support amount. Form 14 itself does not provide for such consideration. Allocation of a tax exemption is a separate and distinct issue from child support in dissolution proceedings and evaluated like any other asset or property rather than as part of a support order. *See Stanton v. Abbey*, 874 S.W.2d 493, 500 (Mo.App.1994) (Term of separation agreement allocating tax exemptions could not be modified by trial court in the decree of dissolution where agreement provided for modification by mutual agreement of parties only; terms of child support, custody, and visitation contained in a separation agreement can be modified by a trial court). While Missouri courts have jurisdiction over the allocation of the tax exemption *in a dissolution proceeding* because it may be a factor in determining the money available to pay support obligations,[4] no authority is presented for considering the exemptions in calculating the presumed child support amount utilizing Form 14 in temporary support proceedings related to protection orders. The proceeding before the trial court was a Petition for Order of Restraint and not a dissolution proceeding. The trial court did not err in declining to consider the allocation of the income tax exemption in calculating the amount of presumed child support pursuant to Form 14.

### III. *MAINTENANCE*

Mr. Coble's final contention on appeal is that the trial court erred in determining the

2. If appellant was arguing that rent from only one of the properties should have been considered as part of respondent's income, one can only assume that rent from the other properties would be factored into his monthly income.

3. The record indicates that the checks are redeemable for ninety days after they are issued.

4. *See Mehra v. Mehra*, 819 S.W.2d 351, 357 (Mo. banc 1991); *Echele v. Echele*, 782 S.W.2d 430, 439–40 (Mo.App.1989); *Corey v. Corey*, 712 S.W.2d 708, 711 (Mo.App.1986).

amount of maintenance he was to pay Mrs. Coble because the court failed to consider income from the rental properties and applied guidelines used in the District Court of Johnson County, Kansas, in setting the maintenance amount.

Once a court makes a determination that maintenance is proper, the amount of maintenance granted must be patently unwarranted or wholly beyond the means of the spouse obligated to pay in order to merit reversal or revision of the award. *Hull v. Hull*, 591 S.W.2d 376, 383 (Mo.App.1979). Review of a maintenance award is limited to determining whether the trial court abused its discretion so as to shock the appellate court's sense of justice. *Hicks v. Hicks*, 859 S.W.2d 842, 846–47 (Mo.App.1993); *Theilen v. Theilen*, 847 S.W.2d 116, 123 (Mo.App. 1992).

Analysis of Mr. Coble's assertion that the trial court erred in failing to include income from rentals in determining the maintenance award is the same expressed in the previous point regarding child support award. Neither party was receiving "income" from the rentals. The rent amounts received were placed into an escrow account. The court's refusal to include these amounts when setting maintenance was not error.

Mr. Coble next contends that the court's use of Johnson County, Kansas, guidelines in setting the amount of maintenance awarded to Mrs. Coble was error.[5] Section 452.335 sets forth the factors the trial court must follow in awarding maintenance, including a catch-all factor at paragraph 2(10), which allows the consideration of "any other relevant factors." This section allows the trial court "great latitude" in calculating the maintenance amount. *Theilen*, 847 S.W.2d at 123 (*citing In re Marriage of Ross*, 772 S.W.2d 890, 893 (Mo.App.1989)). Missouri law allows the trial court the latitude to consider Johnson County, Kansas, maintenance parameters and guidelines if the court considered them helpful in determining the

proper amount of maintenance to be awarded in this case. The court did.

An award of maintenance is presumed correct. *Id.* Mr. Coble does not contend that the maintenance amount is wholly beyond his means to pay. The trial court did not err in determining the maintenance amount. Neither did the trial court abuse its discretion in awarding Mrs. Coble maintenance.

The judgment of the trial court is affirmed.

All concur.

---

5. Whether the Johnson County, Kansas, guidelines were utilized is unclear. Considerable evidence indicates that they may have been used.

For purposes of analysis, the assumption is that the Johnson County, Kansas, guidelines were utilized by the trial court.